2008 BNH 019

_____

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:                                                          Bk. No. 08-10275-JMD
                                                                Chapter 7
Leslie A. Porter and
Shaun M. Porter,
             Debtors


*Andrew G. Bronson, Esq.*
*Bronson Law Office*
*Franconia, New Hampshire*
*Attorney for Debtor*

*Gregory A. Moffett, Esq.*
*Preti Flaherty Beliveau & Pachios PLLP*
*Concord, New Hampshire*
*Attorney for Creditor*


## MEMORANDUM OPINION

**I.  INTRODUCTION**

This matter came before the Court on an Order to Show Cause dated August 28, 2008 (Doc. No. 12) (the "OSC"), regarding the provisions contained in a reaffirmation agreement dated April 14, 2008, between Leslie Porter and Shaun Porter (the "Debtors") and Woodsville Guaranty Savings Bank (the "Bank") filed on May 9, 2008 (Doc. No. 11) (the "Agreement").

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

**II. FACTS**

The Debtors filed a voluntary petition under chapter 7 of the Bankruptcy Code[1] on January 31, 2008.  In their schedules, the Debtors listed their residence in Haverhill, New Hampshire in schedule A at a value of $110,000.00, a mortgage on the homestead in favor of the Bank in schedule D in the amount of $98,000.00, and indicated an intent to reaffirm their debt to the Bank in their statement of intention.  Prior to the first meeting of creditors, counsel for the Bank forwarded to Debtors' counsel a reaffirmation agreement.  The Agreement was executed by the Debtors on March 6, 2008, by the Bank on April 14, 2008, and was filed with the Court on May 9, 2008.

In the Agreement the Debtors reaffirm their debt to the Bank in the amount of $97,360.09 in accordance with the terms of an adjustable rate note dated June 13, 2003, secured by a mortgage on the Debtors' homestead.  The only change in the original terms of the debt were included immediately above the signatures of the parties to the Agreement where it provided:

> Debtors agree that assumed debt includes the Bank's reasonable post-petition attorney fees of $350.00 related to Debtors' bankruptcy and the preparation and filing of this agreement.

Counsel for the Bank did not file any appearance in the case, the Bank did not file a proof of claim, and the Bank never sought approval of attorneys' fees in connection with the bankruptcy proceeding.

---

[1] Unless otherwise indicated, in this opinion the terms "Bankruptcy Code," "section" or "§" refer to Title 11 of the United States Code, 11 U.S.C. § 101 et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 ("BAPCPA").

The Court issued the OSC ordering the Bank to appear and show cause why the Agreement should not be denied for failure to obtain allowance of postpetition fees and expenses under § 506(b) of the Bankruptcy Code.

## III. DISCUSSION

### A. Creditor Conduct and Business Practices

Individual debtors under chapter 7 of the Bankruptcy Code who schedule debts secured by property of the estate must file with the bankruptcy court a statement of intention with respect to the retention or surrender of such property. 11 U.S.C. § 521(a)(2)(A). Such a debtor must elect one of three options with respect to such property: (1) reaffirm the debt secured by the property, (2) redeem the property by paying the debt or (3) surrender the property to the holder of the security interest. See Bank of Boston v. Burr (In re Burr), 160 F.3d 843, 849 (1st Cir. 1998). If a debtor elects to reaffirm the debt, he or she must contact the creditor to negotiate a reaffirmation agreement. Reaffirmation agreements are consensual agreements between a debtor and a creditor in which either party is free to demand terms in addition to those contained in the debt obligation being reaffirmed. See Jamo v. Katahdin Fed. Credit Union (In re Jamo), 283 F.3d 392, 400-01 (1st Cir. 2002) (holding under pre-BAPCPA law that a creditor may demand reaffirmation of a separate unsecured obligation as a condition of agreeing to reaffirm a secured obligation subject to the provisions of § 521 of the Bankruptcy Code).

In this case the only provision of the Agreement that includes an obligation in addition to the original debt obligation is the addition of $350.00 to the amount of the reaffirmed obligation as "post-petition attorney fees . . . related to the Debtors' bankruptcy and the preparation and

filing of [the Agreement]." The Bank contends that it is free to negotiate new terms as part of a reaffirmation agreement without seeking prior court approval. However, the wide latitude granted to the parties in negotiating the terms of a reaffirmation agreement is not limitless. A reaffirmation agreement may not be the product of abusive creditor practices. Id. at 398. Likewise, a creditor may not use objectively coercive tactics in negotiating reaffirmation agreements with debtors. Pratt v. General Motors Acceptance Corp. (In re Pratt), 462 F.3d 14, 20 (1st Cir. 2006); Diamond v. Premier Capital, Inc. (In re Diamond), 346 F.3d 224, 228 (1st Cir. 2003) (citing Jamo). "Due to the importance of the [Bankruptcy] Code's 'fresh start' policy, . . . reaffirmation agreements are subjected to very stringent controls to ensure that debtors are neither coerced nor harassed by secured creditors into reassuming debts which would otherwise be entitled to discharge." Pratt, 462 F.3d at 18.

The Bank points out that BAPCPA imposed additional requirements on the reaffirmation process for the protection of debtors by requiring that extensive disclosures be given to debtors at or before the time they enter into a reaffirmation agreement. See 11 U.S.C. § 524(c)(2) and (k). The Bank contends that such disclosures protect debtors from abusive creditor practices. It also argues that many bankruptcy courts have held that creditors may charge reasonable attorneys' fees in connection with reaffirmation agreements. See In re French, 185 B.R. 910, 913 (Bankr. M.D. Fla. 1995) (a court cannot and should not dictate the terms of a reaffirmation agreement); In re Hutchins, 99 B.R. 56, 58 (Bankr. D. Colo. 1989) (creditor entitled to charge attorneys' fees in a reaffirmation agreement where there has been no default by the debtor); In re Pendlebury, 94 B.R. 120, 124 (Bankr. E.D. Tenn. 1988) (absent overreaching by a creditor, or an unrepresented debtor, the court would not inject itself into the reaffirmation process). However,

4

even those courts recognize some limitation of the terms of the fees.  French, 185 B.R. at 913 (creditor should not receive a second chance to force a debtor to accept new terms more favorable to the creditor); Hutchins, 99 B.R. at 58-59 (creditor is only entitled to reasonable attorneys' fees as determined by the court); Pendlebury, 94 B.R. at 124 (court would not countenance overreaching by a secured creditor).[2]  The cases cited by the Bank are consistent with the law in the First Circuit prohibiting coercive or abusive creditor practices in the negotiation of reaffirmation agreements.  See Pratt, 462 F.3d at 18; Diamond, 346 F.3d at 228; Jamo, 283 F.3d at 398.

The potential is high for a secured creditor to engage in coercive or abusive tactics when negotiating with an individual debtor over a reaffirmation agreement necessary for the debtor to retain their principal residence.  Even if the Bank pursued its rights in this matter in good faith under applicable law, its conduct may be objectively coercive even though it lacked any coercive intent.  See Pratt, 462 F.3d at 19-20.  Any determination of coerciveness depends on the facts of each case.  Id. at 20.  No evidentiary record has been established in this case which would support any finding on the nature of the Bank's conduct in this case.  In the interests of judicial economy in reviewing the Agreement, as well as future reaffirmation agreements, the Court will not require the parties to establish an evidentiary record on creditor conduct unless the circumstances of a particular case necessitate such action.  Rather, the Court shall not rely on any

---

[2] One circuit court of appeals has also expressed some caution regarding the terms of fees requested by creditors in reaffirmation agreements.  See In re Turner, 156 F.3d 713, 721 (7th Cir. 1998) ("A reaffirmation agreement that is the product of negotiation between debtor and creditor is far less likely to create problems (including unnecessary costs to the debtor) further down the road.  And we trust that bankruptcy courts will keep an eye on the fees requested by creditors for negotiating and drafting routine reaffirmation agreements.") (emphasis added).

apparent consensual agreement between a debtor and a creditor, but shall review any attorneys' fees, or other fee provisions, in reaffirmation agreements for reasonableness.

### B. Attorneys' Fees

#### 1. Bankruptcy Review

The reasonableness of attorneys' fees is determined under the lodestar method. Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd., 282 F.3d 23, 34 (1st Cir. 2002) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). Under the lodestar method, the Court initially looks at the number of hours reasonably spent by the attorney multiplied by a reasonable hourly rate. Tamko, 282 F.3d at 34. The lodestar may then be adjusted up or down depending on a number of factors. Boston & Maine Corp. v. Moore (In re Boston & Maine Corp), 776 F.2d 2, 7 (1st Cir. 1985). Ordinarily a court performing a lodestar analysis would have detailed time records available. Such records have not been submitted by the Bank. However, the Court does not need to review such records in this case.

According to the terms of the Agreement, the attorney's fees added to the reaffirmed obligation by the Bank are "related to the Debtors' bankruptcy and the preparation and filing of [the Agreement]." Although no detailed time records were submitted by the Bank, its written response to the OSC details the activities of its attorney which constitute the basis for the attorney's fee addition. Those activities include reviewing loan documents after notification of the bankruptcy filing, review of the Debtors' schedules and statement of affairs, analysis of the Debtors' financial ability under schedules I and J and preparation of the Agreement. There is no evidence of any prepetition payment default or lack of cooperation by the Debtors in seeking to enter into the Agreement. The Bank's position is that after its attorney performed a review of the

Debtors' schedules and statement of affairs, and their financial ability, he prepared the Agreement and sent it to the Debtors' counsel. The Agreement was subsequently signed by the parties without further negotiation.

All of the activity prior to the preparation of the Agreement consisted of reviewing the bankruptcy filing and performing a financial analysis of the Debtors' ability to pay the debt going forward. Such activities do not require specialized legal knowledge. Rather they are the very activities that any creditor should do upon receipt of a notice of a bankruptcy filing, as part of the ordinary administration of a loan. The Bank has offered no explanation of how this case was so extraordinary or different that it could not have conducted such a routine review of one of its lending relationships without lawyer input. These activities were clearly part of loan administration and the exercise of business judgment by the Bank. Such activities do not ordinarily require advice from a trained legal expert.

Accordingly, the Court finds that any time spent by the Bank's counsel reviewing the information in the bankruptcy schedules or analyzing the Debtors' financial ability to pay was not time reasonably incurred by an attorney in a routine first mortgage loan with no payment default and with no challenge being made to the validity or perfection of the mortgage lien.

### 2. Preparation of the Reaffirmation Agreement

Once the Bank made the business decision to enter into a reaffirmation agreement with the Debtors, the preparation of the Agreement did not require specialized legal skill or training. The form for reaffirmation agreements is published by the Administrative Office of the United States Courts and is readily available from many public sources, including this Court's web site. The portion of the form that needs to be completed by the Bank involves inserting, in the proper

location in the form, information from the Bank's records regarding the identity of its customer, the debt and the collateral.  No legal drafting, specialized legal knowledge or legal judgment is necessary to complete the typical reaffirmation agreement.  No argument has been made that the Agreement is anything but a typical agreement.

 Many bankruptcy courts have held under analogous circumstances that simple tasks like reviewing numbers and filling in pre-printed, readily available blank forms as part of bankruptcy proceedings are costs best borne by creditors themselves, and should not be imposed on debtors via attorneys' fees.  Cf. In re Madison, 337 B.R. 99, 105 (Bankr. N.D. Miss. 2006) (finding that preparing and filing a proof of claim is "ministerial in nature" for which no attorneys' fees should be allowed); In re Staggie, 255 B.R. 48, 56 & n.6 (Bankr. D. Idaho 2000) (noting that preparing a proof of claim is a task better left to the creditor's own staff and that it is "not unreasonable to expect [the] [c]reditor's own staff to fill in the blanks of the form for a proof of claim, or to complete a loan payoff statement."), superseded on other grounds by statute, BAPCPA, as recognized in In re Astle, 364 B.R. 735 (Bankr. D. Idaho 2007); In re Allen, 215 B.R. 503, 504 (Bankr. N.D. Tex. 1997) (preparing a proof of claim is a ministerial act for which no attorneys' fees should be charged against a debtor); In re Good, 207 B.R. 686, 689 (Bankr. D. Idaho 1997) (assessing reasonableness of attorneys' fees and noting that time spent by a paralegal for the creditor's counsel computing the amount of default on creditor's secured claim was a task properly relegated to the creditor's own staff); In re Banks, 31 B.R. 173, 178-79 (Bankr. N.D. Ala. 1982) (assessing reasonableness of attorneys' fees and noting that preparing and filing a proof of claim "did not require any special legal training nor did it involve the practice of law" and explaining that "[i]t is both unnecessary and unreasonable to charge a

Chapter 13 debtor with attorney's fees for the performance of non-legal services when for the performance of the same services a nonlawyer could not charge or collect such fees.").

Accordingly, time spent by counsel completing a typical reaffirmation agreement is not compensable as time reasonably incurred because no specialized legal knowledge or training is necessary simply to transfer information from the Bank's records to the reaffirmation form.

**IV.  CONCLUSION**

For the reasons set forth in this opinion, the Court finds that the time incurred by the Bank's counsel in connection with the Bank making a business decision to enter into a reaffirmation agreement with the Debtors and in transferring information from the Bank's records to the reaffirmation form were not activities requiring specialized legal training or knowledge, were not reasonably incurred and, therefore, are not reasonable.  The Court shall enter a separate order denying approval of the Agreement, without prejudice to the parties filing a revised reaffirmation agreement dated as of the date of the Agreement.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

ENTERED at Manchester, New Hampshire.


Date:   December 22, 2008            /s/ J. Michael Deasy
                                     J. Michael Deasy
                                     Bankruptcy Judge